J-A09006-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: IRREVOCABLE LIFE INSURANCE TRUST OF RUTH M. GRANT DATED FEBRUARY 16, 2004 | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: LEROY L. METZ, II, ESQ. | : | No. 805 WDA 2024 |

Appeal from the Order Entered June 17, 2024
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): 022304051

| | | |
|---|---|---|
| IN RE: IRREVOCABLE LIFE INSURANCE TRUST OF RUTH M. GRANT DATED FEBRUARY 16, 2004 | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: BLAIR B. EILER | : | No. 810 WDA 2024 |

Appeal from the Order Entered June 17, 2024
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): 022304051

| | | |
|---|---|---|
| IN RE: IRREVOCABLE LIFE INSURANCE TRUST OF LOUIS A. GRANT AND RUTH M. GRANT DATED OCTOBER 2, 1992 | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: LEROY L. METZ, II, ESQ. | : | No. 1236 WDA 2024 |

Appeal from the Order Entered June 17, 2024
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): 022301644

| | | |
|---|---|---|
| IN RE: IRREVOCABLE LIFE INSURANCE TRUST OF LOUIS A. GRANT AND RUTH M. GRANT DATED OCTOBER 2, 1992 | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: BLAIR B. EILER | : | No. 1241 WDA 2024 |

J-A09006-25

Appeal from the Order Entered June 17, 2024
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): 022301644

BEFORE: KUNSELMAN, J., NICHOLS, J., and LANE, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: May 23, 2025**

Leroy L. Metz, II, Esq. and Blair B. Eiler appeal from the order holding Mr. Eiler in breach of his fiduciary duty under the Irrevocable Life Insurance Trust of Louis A. Grant ("Father") and Ruth M. Grant ("Mother"), dated October 2, 1992 ("the Father-and-Mother Trust), to Louis A. Grant, Jr. ("Son"). The order placed a constructive trust on 25% of benefits paid to the Irrevocable Life Insurance Trust of Mother, dated February 16, 2004 ("the Mother-Only Trust"), from proceeds of two life-insurance policies that Mr. Eiler transferred from the Father-and-Mother Trust and to the Mother-Only Trust. The court awarded the $2,002,410.96 in the constructive trust to Son. For the reasons below, we affirm.

On October 2, 1992, Father and Mother jointly settled a life-insurance trust. They named all four of their children (Son and three Daughters) as equal beneficiaries of the Father-and-Mother Trust. Mr. Eiler, who was Father and Mother's long-time CPA, served as a "Special Trustee" of the trust.

Under the trust agreement, Father and Mother forfeited all control and disposition of the trust assets. The trust was irrevocable. Also, the agreement directed that the Trustees would collect any life-insurance proceeds payable

on Father's or Mother's death and divide those proceeds equally among the four children. Finally, Article V of the trust document dictated that:

> The Special Trustee may . . . purchase insurance on the life of the Settlors which may be acquired as separate policies (covering the life of the Settlors). If insurance is purchased by the Special Trustee, the Special Trustee shall be vested with all right title, claim benefit and interest in and to such coverages, and is authorized and empowered to exercise and enjoy, for the purposes of **this** Trust as absolute owner of such insurance coverages, all the options, benefits, rights and privileges pertaining to such insurance coverage . . . .

Mother-and-Father Trust Agreement at 9 (emphasis added).

In addition, the powers of the Special Trustee included the ownership, management, and allocation of any life-insurance policies that the Special Trustee might buy. **See id.** at 10-11. Sections B, C, and H of the agreement allowed the Special Trustee to (B) "assign all or part of such insurance coverages with the administration of **this** Trust," (C) "designate or change from time to time the beneficiary with respect to such insurance coverages," and (H) "exercise any options available to him under any policies then in his possession, including the right to surrender the same for cash . . . ." **Id.** (emphasis added).

The trust purchased a life-insurance policy on Father and Mother and named itself as beneficiary. This first policy is not in dispute.

On January 6, 1995, Father died, and Mother became sole owner of the family businesses. Seven years later, in 2002, Mother decided to bequeath the family businesses to Son and to increase the life-insurance payouts to her

Daughters "in an attempt to equalize the values going to her children." Orphans' Court Opinion, 9/6/24, at 3.

Mother also wished to acquire the new life-insurance policies as soon as possible to save money on the premiums. Her attorney told her that he "would prepare a new trust for the life-insurance policies." *Id.* However, Mother's attorney did not promptly create a new trust for the new policies.

Instead, in September 2003, the Father-and-Mother Trust bought a second policy on Mother's life worth $3,000,000 and a third policy on Mother's life worth $5,000,000. Thus, the combined death benefit of the second and third policies was $8,000,000. Like the first policy, the Father-and-Mother Trust named itself the beneficiary of the new policies. But the Trustees had "the intention of eventually transferring them to [a] new trust that only benefited [the three] daughters." *Id.* at 5.

Three months later, on February 16, 2004, Mother's attorney prepared documents for a new trust, which Mother settled. She named only the three Daughters as equal beneficiaries of this Mother-Only Trust. She wanted the new trust to assume ownership of the second and third policies from the Father-and-Mother Trust for the exclusive benefit of Daughters.

Mr. Eiler, who was also a Trustee of the Mother-Only Trust, signed the forms to change the beneficiary and ownership of the second and third policies from the Father-and-Mother Trust to the Mother-Only Trust. Mr. Eiler did not speak with Son about the second and third policies or obtain a court order

- 4 -

permitting the transfer of the policies. Mother then began funding the Mother-Only Trust, so it could pay the policies' premiums.

In June 2006, the Mother-Only Trust surrendered the second and third policies for their cash values. Using the funds from the surrendered policies, the Mother-Only Trust purchased a fourth policy on Mother's life with a death benefit of $8,000,000 and named itself as beneficiary. The following year, Mother sold her businesses for approximately $50,000,000, and Son "received over $19,000,000 in excess of his interest in the businesses." *Id.* at 8.

In 2020, Mother's attorney resigned a Special Trustee for both trusts. Attorney Metz assumed those roles. Two years later, Mother died. The fourth policy paid the $8,000,000 death benefit to the Mother-Only Trust.

Attorney Metz filed a First and Final Account of the Father-and-Mother Trust in the Orphans' Court of Allegheny County. Due to the filing, Son learned that the Father-and-Mother Trust had purchased the second and third policies, that Mr. Eiler had transferred those policies from the Father-and-Mother Trust to the Mother-Only Trust, and that the Mother-Only Trust surrendered them and used the funds to purchase the fourth policy. Son filed an objection to the First and Final Account of the Father-and-Mother Trust. He alleged that the Trustees improperly transferred the second and third policies in violation of the Father-and-Mother Trust Agreement.

Following a non-jury trial, the orphans' court ruled in favor of Son. It found Mr. Eiler, the Special Trustee at the time, breached his fiduciary duty to

Son by transferring the second and third policies to the Mother-Only Trust.[1]

As remedy, the orphans' court imposed a constructive trust on the Mother-Only Trust for $2,002,410.96, "representing [Son's] one-quarter beneficial share of the [fourth policy's] net proceeds" of the transferred policies. *Id.* at 9. Attorney Metz and Mr. Eiler timely appealed.

They raise two issues as follows:

1. Did the [orphans'] court err . . . when it found that the trustees of the [Father-and-Mother] Trust breached the fiduciary duty owed to [Son], when the ownership of certain, life-insurance policies were changed from the [Father-and-Mother] Trust to the [Mother-Only] Trust?

2. Did the [orphans'] court err . . . when it awarded damages to [Son] in the amount of $2,002,410.96 and created a constructive trust . . . [for] one-quarter of the death benefit of the [$8,000,000 paid to the Mother-Only] Trust?

Eiler and Metz's Brief at 9. We address each claim of error in turn.

First, Mr. Eiler and Attorney Metz claim there was insufficient evidence to prove that Mr. Eiler breached his fiduciary duty to Son by transferring the second and third policies to the Mother-Only Trust. They observe that Mother wanted the second and third policies to benefit only her Daughters when the Father-and-Mother Trust purchased the policies. In Mr. Eiler's and Attorney Metz's minds, sections B, C, and H of Article V of the Father-and-Mother Trust Agreement expressly authorized the Trustees to transfer the ownership and change the beneficiaries of the second and third policies as they desired.

---

[1] The orphans' court did not find Mr. Metz in breach of fiduciary duty, because he was not a Trustee when Mr. Eiler transferred the second and third policies.

The "interpretation of a trust presents a question of law, [for] which our standard of review is *de novo*, and our scope of review is plenary." ***In re Amended & Restated Deed of Trust of Margaret M. Holdship Dated Feb. 26, 1981 fbo Holdship***, 288 A.3d 919, 927 (Pa. Super. 2023).

"The pole star in interpreting trusts is the settlor's intent, which must be ascertained from the language of the trust." ***Id.*** A court "shall not resort to canons of construction, except where the language of the trust is ambiguous or conflicting and the settlor's intent cannot be garnered from the trust language." ***Id.*** In other words, if the language of a trust document is clear and unambiguous, the words themselves are the only competent evidence of the settlor's intent.

Mr. Eiler's and Attorney Metz's interpretation of the Father-and-Mother Trust Agreement is incorrect. They overlook the fact that Father ***and*** Mother jointly settled the Father-and-Mother Trust in 1992 to benefit all four of their children equally. In doing so, Father and Mother agreed to relinquish control over any assets placed in the Father-and-Mother trust. Therefore, after Father died, the Special Trustees' fiduciary duties were not to Mother, but to her four children, in equal measure. As a result, Mother had no legal authority to revise Father's and her 1992 estate plan in 2002 (however well-intentioned the new estate plan may have been). Based on the plain language of the Father-and-Mother Trust Agreement, Mother forfeited all power to alter the irrevocability of the Father-and-Mother Trust or to direct the disposition of any property it acquired. Her subjective desires for the second and third policies, being in

conflict with the plain language of the Father-and-Mother Truest Agreement regarding the purpose of that trust's property, are irrelevant.

Hence, when the Trustees purchased the second and third policies, they purchased them "for the purposes of **this** Trust [*i.e.*, the Father-and-Mother Trust] as absolute owner of such insurance coverages . . . ." Father-and-Mother Trust Agreement at 9 (emphasis added). That language clearly expresses the joint wishes of Father and Mother in 1992. At that time, they desired to limit the Trustees to owning life-insurance policies **for that trust** – the Father-and-Mother Trust – not for a future trust that Mother might create on her own.

As a matter of law, the Trustees did **not** purchase the second and third policies for transfer to a yet-to-exist trust, because the Father-and-Mother Trust Agreement did not allow them to purchase life insurance for any trust other than the Father-and-Mother Trust. The Trustees' attempts to effectuate Mother's desire to use the Father-and-Mother Trust as a holding tank, until Mother's attorney found time to create the Mother-Only Trust, has no bearing on the analysis.

Mother's attorney and Mr. Eiler misinterpreted (or simply ignored) the plain language of Article V, which explicitly limited the Special Trustee's power to "this Trust." **Id.** Mr. Eiler and Attorney Metz seek to rewrite Article V to implement Mother's unilateral estate plan, in violation of Father's and Mother's joint estate plan dating back to 1992. When the words of a trust document

are clear and unambiguous, they are the only evidence of the settlor's intent and the trustees' duties.  *See In re Trust of Margaret M. Holdship*, *supra*.

By relinquishing the ownership and transferring the beneficiary of the second and third policies to the Mother-Only Trust, Mr. Eiler breached his fiduciary duty to Son under the Father-and-Mother Trust Agreement.  He deprived Son of one-fourth of the proceeds from second and third policies, which (but for the improper transfer and surrender of those policies) would have gone to Son under the terms of the Father-and-Mother Trust.

Attorney Metz's and Mr. Eiler's first appellate issue warrants no relief.

For their second issue, they claim the orphans' court could not impose a $2,002,410.96 constructive trust on the Mother-Only Trust to recover the payout on the fourth policy.  Again, they are incorrect.

The Supreme Court of Pennsylvania has long held that the "Orphans' Court, in matters within their jurisdiction, proceed on the same principles as a court of chancery."  *Appeal of Willard*, 65 Pa. 265, 267 (1870).  Hence, an orphans' court has a "broad grant of judicial authority [including] all legal and equitable powers required for or incidental to the exercise of its jurisdiction."  *In re Estate of Damario*, 412 A.2d 842, 844 (Pa. 1980).  The orphans' court therefore has broad remedial powers to protect the victims of disloyal fiduciaries.

When an orphans' court finds a breach of trust, the remedies available include the ordering of "any appropriate relief."  20 Pa.C.S.A. § 7781.  The remedies under Section 7781 include voiding an act of a trustee, imposing a

lien or a constructive trust on trust property, or recovering trust property. *See id.* Of relevance here, "To remedy a breach of trust that has occurred or may occur, the court may . . . trac[e] trust property wrongfully disposed of and recover[] the property *or its proceeds*." 20 Pa.C.S.A. §7781(b)(9)(iii) (emphasis added).

Under this statute, the orphans' court had authority to trace the second and third policies from the Father-and-Mother Trust to the Mother-Only Trust, through the purchase of the fourth life-insurance policy, and ultimately to reach and recover the death benefit of $8,000,000 paid on the fourth policy. The record establishes that the $8,000,000 paid on the fourth policy are the proceeds derived from the misappropriated second and third policies. Thus, the orphans' court may recover those proceeds. *See* 20 Pa.C.S.A. §7781(b)(9)(iii).

The Trustees, on behalf of the Mother-Only Trust, used the cash values of the second and third policies to purchase the fourth policy. Furthermore, the payout on the fourth policy was equal to the anticipated payouts on the second and third policies. The second and third policies were worth a combined total of $8,000,000, which is what the fourth policy paid upon Mother's death. Hence, the orphans' court logically followed the money from the second and third policies to the fourth policy and its identical death-benefit payout.

The remedy of the orphans' court is eminently reasonable and equitable. It prevents unjust enrichment of Daughters from the improperly transferred

- 10 -

second and third policies. Moreover, 20 Pa.C.S.A. §7781(b)(9)(iii) expressly grants the court the power to issue such equitable relief in the form of a constructive trust.

We dismiss Attorney Metz's and Mr. Eiler's final issue as meritless.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 05/23/2025